UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISON
CASE NO. 5:24-cv-461

BRIAN MORGAN,

    *Plaintiff,*

v.

GENERAC POWER SYSTEMS, INC.,

    *Defendant.*

COMPLAINT AND
DEMAND FOR JURY TRIAL

# COMPLAINT

**BRIAN MORGAN ("Plaintiff")** by and through his undersigned counsel, **JOHNSON BECKER, PLLC** and **HOWARD STALLINGS LAW FIRM**, hereby submits the following Complaint and Demand for Jury Trial against Defendant **GENERAC POWER SYSTEMS, INC.** ("Defendant Generac"), and alleges and says the following upon personal knowledge, belief, and investigation of counsel:

## NATURE OF THE CASE

1. Defendant Generac manufactures, designs, warrants, markets, distributes and sells portable generators, including the "Generac Portable Generator" model number GP6500 (hereafter referred to as the "subject generator(s)") at issue in this case.

2. On or about May 7, 2022, Brian was moving the subject generator from his truck bed. As he was setting it down, the generator titled back. As the generator fell, the retractable handlebars went up and the tip of Brian's right ring finger got caught in between the bar of the generator and the handle of the generator and was sliced off.

3. As a result, Brian suffered complete fingertip amputation to his right ring finger. Brian is right-hand dominant, and once menial tasks such as gripping tools and buttoning his shirt now require extra effort; and will for the rest of his life.

4. On or about July 29, 2021, Generac recalled[1] more than 320,000 Generac Portable Generators, which includes the subject generator, because "[a]n unlocked handle can pinch consumers' fingers against the generator frame when the generator is moved, posing finger amputation and crushing hazards."[2] The recall was issued in cooperation with the Consumer Products Safety Commission (CPSC).

5. On November 10, 2022, the CPSC re-announced its recall, and updated the "incident/injuries" section of the recall notice to state "[t]he firm has received a total of 37 reports of injuries, 24 resulting in finger mutations and five in finger crushing".[3]

6. The CPSC carried out an investigation and ultimately charged Generac with not reporting this potential hazard to the federal agency in a timely manner, despite having received reports of crushings and partial amputations from consumers dating *as far back as October 2018 and continuing into 2020.*

7. According to the Commission's findings, by the time Generac had filed an initial report with the Commission, the firm had received *no fewer than five* reports of consumers losing

---

[1] *See* https://www.cpsc.gov/Recalls/2021/Generac-Recalls-Portable-Generators-Due-to-Finger-Amputation-and-Crushing-Hazards (last accessed August 7, 2024). A copy of the Safety Recall Report is attached hereto as Exhibit A.
[2] *Id*.
[3] *See* https://www.cpsc.gov/Recalls/2023/CPSC-Reannounces-Recall-of-Generac-Portable-Generators-Additional-Finger-Amputation-and-Crushing-Injury-Reported-New-Repair-Kit-Available A copy of the Re-Announced Recall is attached hereto as Exhibit B.

parts of their fingers while attempting to move their generators.[4] In an April 2023 Settlement Agreement with Defendant Generac, the Commission alledged:

> Despite having information reasonably supporting the conclusion that the Subject Products **contained a defect or created an unreasonable risk of serious injury or death,** Generac did not notify the Commission immediately of such defect or risk, as required by sections 15(b)(3) and (4) of the CPSA, 15 U.S.C. § 2064(b)(3), (4), in violation of section 19(a)(4) of the CPSA, 15 U.S.C. § 2068(a)(4).[5]

8. Generac agreed to pay a $15.8 million civil penalty in settlement of these charges.[6]

9. Defendant Generac manufactured these generators, including the subject generators, with a defect that made them inherently dangerous.

10. Plaintiff brings this case as a direct and proximate result of the strict products liability, negligence, breach of warranties of Defendant Generac. Plaintiff also seeks an award of punitive damages, as Generac's conduct demonstrates a malice or reckless disregard of the health safety of consumers.

## THE PARTIES

11. Plaintiff Brian Morgan is a resident and citizen of the City of Fayetteville, County of Cumberland, State of North Carolina and is 34 years old.

12. Defendant Generac holds itself out as a "leading energy technology company that provides backup and prime power systems for home and industrial applications, solar + battery storage solutions, smart home energy management devices and energy services, advanced power grid software platforms and engine- and battery-powered tools and equipment."[7]

---

[4] See https://www.cpsc.gov/Newsroom/News-Releases/2023/Generac-Agrees-to-Pay-15-8-Million-Civil-Penalty-for-Failure-to-Immediately-Report-Portable-Generators-Posing-Finger-Amputation-and-Crushing-Hazards ( last accessed August 7, 2024). A copy of the CPSC's Settlement order is attached hereto as Exhibit C.
[5] Id.
[6] Id.
[7] See Generac 2022 Annual Report, https://investors.generac.com/static-files/d48234f6-0b29-48d5-bc90-304a0a13100a (last accessed June 19, 2023).

13. Defendant Generac Power Systems, Inc. is a Wisconsin domestic business corporation with its principal place of business located at S45W29290 State Road 59, Waukesha WI, 53189.

14. Defendant Generac engages in continuous and substantial business throughout the United States, including in North Carolina.

## JURISDICTION AND VENUE

15. Defendant Generac advertises and sells goods in the State of North Carolina and has advertised and sold the type of Generac Portable stands at issue in in this matter in the State of North Carolina.

16. Defendant Generac transacted and conducted business within the State of North Carolina that relates to the allegations in this Complaint.

17. Defendant Generac derived substantial revenue from goods and products sold and used in the State of North Carolina, including Generac Portable Generators.

18. Defendant Generac expected or should have expected its acts to have consequences within the State of North Carolina and derived substantial revenue from interstate commerce related to Generac Portable generators.

19. Defendant Generac regularly and persistently engaged in the business of marketing, distributing, and/or selling Generac Portable generators for use by consumers, including those within the State of North Carolina.

20. Defendant Generac is authorized to do business in the State of North Carolina and derives substantial income from doing business in this state.

21. Defendant Generac purposefully availed itself of the privilege of conducting activities within the State of North Carolina, thus invoking the benefits and protections of its laws.

22. At all times relevant herein, Defendant Generac conducted substantial business in North Carolina and purposely availed itself of the privilege of doing business in North Carolina by knowingly marketing, distributing, selling and shipping products, including Generac Portable generators, into North Carolina for sale to consumers in this state. Further, this action arises from Defendant Generac's conduct directed toward North Carolina, arises from a tort committed in whole or in part within North Carolina, relates to Defendant Generac's regular and persistent manufacture, supply and sale of Generac Portable generators, and resulted in injuries in North Carolina. Therefore, personal jurisdiction is proper as to Defendant Generac.

23. Jurisdiction over Defendant Generac is also proper under the due process provisions of the North Carolina and United States constitutions. *See e.g. Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

24. This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

25. Venue of this action properly lies in the Eastern District of North Carolina, pursuant to 28 U.S.C. § 1391(a), as it is the judicial district and division in which a substantial part of the events or omissions giving rise to the claim occurred, in which Defendant Generac does business relating to the allegations contained herein, and wherein Plaintiff resides.

# OPERATIVE FACTS

A. **The Generac Portable Generator Recall & $15.8 Million Civil Penalty**

26. Defendant Generac manufactures, designs, warrants, markets, distributes and sells home backup generators, including the "Generac Portable Generator" model number GP80000E (hereafter referred to as the "subject generator(s)") at issue in this case.

27. On or about July 29, 2021, Generac recalled[8] more than 320,000 Generac Portable Generators, which includes the subject generator, because "[a]n unlocked handle can pinch consumers' fingers against the generator frame when the generator is moved, posing finger amputation and crushing hazards."[9] The recall was issued in cooperation with the Consumer Products Safety Commission (CPSC).

28. On November 10, 2022, the CPSC re-announced its recall, and updated the "incident/injuries" section of the recall notice to state "[t]he firm has received a total of 37 reports of injuries, 24 resulting in finger mutations and five in finger crushing".

29. The CPSC carried out an investigation and ultimately charged Generac with not reporting this potential hazard to the federal agency in a timely manner, despite having received reports of crushings and partial amputations from consumers dating *as far back as October 2018 and continuing into 2020.*

30. According to the Commission's findings, by the time Generac had filed an initial report with the Commission, the firm had received *no fewer than five* reports of consumers losing

---

[8] *See* https://www.cpsc.gov/Recalls/2021/Generac-Recalls-Portable-Generators-Due-to-Finger-Amputation-and-Crushing-Hazards (last accessed June 19, 2023). A copy of the Safety Recall Report is attached hereto as Exhibit A.
[9] *Id*.

parts of their fingers while attempting to move their generators.[10] In an April 2023 Settlement Agreement between the CPSC and Defendant Generac, the Commission alledged:

> Despite having information reasonably supporting the conclusion that the Subject Products ***contained a defect or created an unreasonable risk of serious injury or death,*** Generac did not notify the Commission immediately of such defect or risk, as required by sections 15(b)(3) and (4) of the CPSA, 15 U.S.C. § 2064(b)(3), (4), in violation of section 19(a)(4) of the CPSA, 15 U.S.C. § 2068(a)(4).[11]

31. Generac ultimately agreed to pay a $15.8 million civil penalty in settlement of these charges.[12]

32. The subject generator was purchased in or around May 2021 at Lowes Home Improvement located at 300 Cornerstone Blvd, Hot Springs, AR 71913.

**B. The Incident on May 7, 2022**

33. On or about May 7, 2022, Brian was moving the subject generator from his truck bed. As he was setting it down, the generator titled back. As the generator fell, the retractable handlebars went up and the tip of Brian's right ring finger got caught in between the bar of the generator and the handle of the generator and was sliced off.

34. As a result, Brian suffered complete fingertip amputation to his right ring finger. Brian is right-hand dominant, and once menial tasks such as gripping tools and buttoning his shirt now require extra effort; and will for the rest of his life.

35. These generators, including the subject generator, are unsafe due to the propensity for the unlocked handle to crush a consumer's fingers against the generator frame; just as it did in this case.

---

[10] See https://www.cpsc.gov/Newsroom/News-Releases/2023/Generac-Agrees-to-Pay-15-8-Million-Civil-Penalty-for-Failure-to-Immediately-Report-Portable-Generators-Posing-Finger-Amputation-and-Crushing-Hazards ( last accessed June 19, 2023). A copy of the CPSC's Settlement order is attached hereto as Exhibit B.
[11] *Id.*
[12] *Id.*

36. Defendant Generac knew or should have known about the defective nature of its generators; yet failed to disclose this knowledge to the CPSC and hundreds or thousands of consumers, including Brian, which ultimately resulted in his injuries.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Products Liability Inadequate Warning or Instruction
### N.C. Gen. Stat. § 99B-1, et seq

37. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding and succeeding paragraphs as though fully set forth herein.

38. Plaintiff is a "claimant" as the term is defined by N.C. Gen. Stat. § 99B-1(1).

39. Defendant designs and manufactures the generator at issue in this case and is therefore a "manufacturer" as the term is defined by N.C. Gen. Stat. § 99B-1(2).

40. Defendant manufacturers, distributes and sells the generator at issue in this case and is therefore a "seller" as the term is defined by N.C. Gen. Stat. § 99B-1(3).

41. At all relevant times, when Defendant designed, manufactured, and sold the subject generator, Defendant knew or should have known that an unlocked handle could crush a consumer's fingers against the generator frame, resulting in crush injuries or amputations.

42. Plaintiff was not aware of the risk that the unlatched handle of the subject generator could result in crush injuries or amputations, nor was the risk open, obvious, or a matter of common knowledge to consumers.

43. At the time the subject generator left Defendant's control, it did not contain adequate warnings or instructions.

44. Defendant acted unreasonably in failing to provide any warnings or instructions about the risk that the subject generator could crush a consumer's fingers against the generator frame, resulting in crush injuries or amputations.

45. The lack of adequate warnings and instructions created an unreasonably dangerous condition that Defendant knew, or in the exercise of ordinary care, should have known, posed a substantial risk of harm to Plaintiff, who is a reasonably foreseeable claimant.

46. As a proximate result of Defendant's failure to provide adequate warnings and instructions, Plaintiff suffered significant bodily injury and damages.

## SECOND CAUSE OF ACTION
### Products Liability – Inadequate Design or Formulation
### N.C. Gen. Stat. § 99B-1, et seq.

47. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding and succeeding paragraphs as though fully set forth herein.

48. Plaintiff is a "claimant" as the term is defined by N.C. Gen. Stat. § 99B-1(1).

49. Defendant designs and manufactures the generator at issue in this case and therefore is a "manufacturer" as the term is defined by N.C. Gen. Stat. § 99B-1(2).

50. Defendant distributes and sells the generator at issue in this case and therefore is a "seller" as the term is defined by N.C. Gen. Stat. § 99B-1(3).

51. At the time that Defendant designed and manufactured the subject generator, Defendant acted unreasonably in manufacturing and designing the subject generator, and the subject generator was defective.

52. Plaintiff put the subject generator to its ordinary use and, without any warning, the unlocked handle crushed his right ring finger against the generator frame, resulting in a partial amputation.

53. The incident was the result of a design flaw that allowed the unlocked handle to crush a consumer's fingers against the generator frame.

54. At the time the subject generator left Defendant's control, Defendant unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted, and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product.

55. At the time the subject generator left Defendant's control, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use a product of this design.

56. With respect to the subject generator, no unusual conditions were present that would have caused the unlocked handle could crush Plaintiff's fingers against the generator frame.

57. The subject generator was a dangerous instrumentality or substance.

58. As a result, Defendant had a duty to exercise the highest or utmost caution, commensurate with the risk of serious harm posed by the possibility that an unlatched handle could pin the users fingers against the generator frame, including performing reasonable tests and inspections to discover latent hazards.

59. At the very least, Defendant had a duty to take reasonable care in the design and manufacture of the subject generator.

60. As a proximate result of the inadequate design of the subject generator and Defendant's unreasonable acts as described herein, the subject generator failed during its foreseeable and intended use, resulting in bodily injury and damages to Plaintiff.

## THIRD CAUSE OF ACTION
## Common Law Negligence

61. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding and succeeding paragraphs as though fully set forth herein.

62. The subject generator was a dangerous instrumentality or substance.

63. As a result, Defendant had a duty to exercise the highest or utmost caution, commensurate with the risk of serious harm related to the possibility that the subject generator might suffer a failure, including performing reasonable tests and inspections to discover latent hazards.

64. At the very least, Defendant owed Plaintiff a duty to use reasonable care throughout the design, manufacturing, and/or sale of the subject generator, including ensuring that the subject generator was free of any potentially dangerous design defects.

65. Defendant breached its duty to Plaintiff. Defendant was negligent, careless, and reckless in the manufacture, design and/or sale of the subject generator in at least the following ways:

   a. Unreasonably failing to implement appropriate processes, procedures, and systems throughout the manufacture of its generators;

   b. Failing to provide adequate warnings about the risk that the subject generator would fail and spontaneously break, causing severe bodily harm;

   c. Failing to ensure that consumers, including Plaintiff, received adequate warnings about the risk that the subject generator would fail and spontaneously break, causing severe bodily harm; and/or

   d. Failing to provide adequate instructions for the proper handling and use of the subject generator.

66. As the actual and proximate result of Defendant's conduct, Plaintiff suffered significant bodily injury and damages.

## FOURTH CAUSE OF ACTION
### Breach of Implied Warrant of Merchantability

67. Plaintiff re-alleges and incorporates by reference each and every allegation contained in preceding and succeeding paragraphs as though fully set forth herein.

68. At the time Defendant marketed, distributed and sold its generators to the Plaintiff in this case, Defendant warranted that its generators were merchantable and fit for the ordinary purposes for which they were intended.

69. Members of the consuming public, including consumers such as the Plaintiff, were intended third-party beneficiaries of the warranty.

70. Defendant's generators were not merchantable and fit for its ordinary purpose, because they had the propensity to lead to the serious personal injuries as described herein in this Complaint.

71. Plaintiff purchased his generator with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that they were safe for its intended, foreseeable use of pressure washing.

72. Defendant's breach of implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury and damages.

## FIFTH CAUSE OF ACTION
### Punitive Damages
### N.C. Gen. Stat. § 1D-1 et. sq.

73. Plaintiff incorporates by reference each of the allegations set forth in this Complaint as though fully set forth herein.

74. The acts, conduct, and omissions of Defendant Generac, as alleged throughout this Complaint, were willful and malicious. It is unconscionable and outrageous that Defendant would risk the health, safety, and well-being of consumers, including the Plaintiff in this case. Despite its knowledge that the Generac Portable generators, including the subject generator, were unsafe due to the propensity for the unlocked handle to crush a consumer's fingers against the generator frame, Defendant made conscious decisions not to redesign, despite the existence of an economically feasible, safer alternative design, and not to adequately label, warn or inform the unsuspecting consuming public about the dangers associated with the use of its generators. Defendant's outrageous conduct rises to the level that Plaintiff should be awarded punitive damages to deter Defendant Generac from this type of outrageous conduct in the future, as well as to discourage other Defendants from placing profit above the safety of consumers in the United States of America.

75. Prior to and during the manufacturing, sale, and distribution of its generators, Defendant knew that said generators were in a defective condition as previously described herein and knew that those who purchased and used their generators, including Plaintiff, could experience severe physical, mental, and emotional injuries.

76. Further, Defendant knew that its generators presented a substantial and unreasonable risk of harm to the public, including Plaintiff, and as such, Defendant unreasonably subjected consumers of said generators to risk of serious and permanent injury from their use.

77. Defendant Generac had a duty to timely disclose reports of injuries, including reports of crush injuries and amputations similar or identical to those experienced by the Plaintiff in this case, to the CPSC and consumers.

78. However, Defendant Generac falsely and intentionally failed to report the hazards of its Generac Portable Generator to the CPSC and consumers in a timely manner, despite having received reports of crush injuries and partial amputations from consumers dating as far back as October 2018 and continuing into 2020.

79. These omissions by Defendant Generac to the CPSC and hundreds or thousands of consumers, including Brian, were and are material in that it prevented the CPSC for timely recalling the subject generators, and ultimately resulted in Brian's injuries.

80. Despite its knowledge, Defendant, for the purpose of enhancing its profit, knowingly and deliberately failed to remedy the known defects in their generators, and failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in them. Defendant intentionally proceeded with the manufacturing, sale, distribution and marketing of their generators knowing these actions would expose consumers, such as the Plaintiff, to serious danger in order to advance their pecuniary interest and monetary profit.

81. Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendants with willful and conscious disregard for the safety of the Plaintiff, his family, and consumers like him, entitling the Plaintiff to punitive damages.

82. By reason of the foregoing, Plaintiff demands judgment against Defendant Generac for all actual and compensatory damages suffered, as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

83. That Plaintiff have and recover judgment against the Defendant an amount in excess of $75,000.00 for all damages;

84. That costs of this action be taxed against the Defendant;

85. That Plaintiff be granted a trial by jury on all issues so triable;

86. That Plaintiff receive prejudgment interest from Defendants as of the date of filing of the Original Complaint, pursuant to N.C.G.S. 24-5(b);

87. That Plaintiff be awarded attorneys' fees if allowed by law;

88. That Plaintiff recover punitive damages; and

89. For such other and further relief as the court deems just and proper.

## DEMAND FOR JURY DEMAND

90. Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

DATED this 9th day of August, 2024.

        **HOWARD STALLINGS LAW FIRM**

        By: /s/Robert H. Jessup
        Robert H. Jessup (N.C. Bar No. 42945)
        Post Office Box 12347
        Raleigh, North Carolina 27605
        (919) 821-7700
        (919) 821-7703 (Fax)
        rjessup@hsfh.com

        *In association with:*

        **JOHNSON BECKER, PLLC**

        Michael K. Johnson, Esq. (MN #0258696)
        *Pro Hac Vice to be filed*
        KennethW. Pearson, Esq. (MN #016088X)
        *Pro Hac Vice to be filed*
        Adam J. Kress, Esq. (MN #0397289)
        *Pro Hac Vice to be filed*
        444 Cedar Street, Suite 1800
        St. Paul, MN 55101
        (612) 436-1800 / (612) 436-1801 (fax)
        mjohnson@johnsonbecker.com
        kpearson@johnsonbecker.com
        akress@johnsonbecker.com

        ***Attorneys for Plaintiff***